## M. L. PETTIGREW vs. WM. SHIRLEY.

A certificate of pre-emption issued on the 1st June, 1840, under the pre-emption law of 22d June, 1838, will prevail against a certificate of entry made on the 10th April, 1839. The latter entry was subject to the condition, that there was no pre-emption right to the land:. And the pre-emption certificate relates back to the 22d June, 1838, and is thus the older right.

## APPEAL from Cole Circuit Court.

PEYTON R. HAYDEN, for Appellant.

The plaintiff has assigned for error, the said several opinions of the court excepted to, and he will rely in the argument of his cause in this court, upon the following

### POINTS AND AUTHORITIES.

I. That the plaintiff having purchased the land of the United States, and obtained from Uriel Sebree, the receiver of the proper land office, a certificate of such purchase, dated on the 10th day of April, 1839, thereby became entitled to the same, so as to maintain the present ac-

tion therefor; and that it was not competent for the register and receiver of said land office, on the first day of June, 1840, to sell the same, as the land of the United States, to the defendant, and to grant him a certificate of purchase, so as thereby to invest the defendant with a title sufficient in law to bar the plaintiff's right of recovery; and that the court erred in refusing to give to the jury the first, sixth and seventh instructions as prayed for by the plaintiff, as also in giving the said instruction given as aforesaid upon the motion of said defendant.

See 5 Mo. Rep. Morton v. Blankenship *et al*, 346.   1 Mo. Rep. 398. 1 Peter's Rep. 340.   2d part of Public Land Laws, pages 547, 552. 1 Scammon's Rep. 156, Bruner v. Manlove.

2. That the circuit court erred in refusing to give to the jury, the 5th instruction prayed for by the plaintiff.   See act of Congress, approved 22d June, 1838, page 84 sheet acts, or at page 574, 1st vol. Land Laws. See 5 Mo. Rep. page 346 (281–'2.)

3. That the circuit court erred, in not setting aside the verdict of the jury, and in refusing a new trial of the cause, for the reasons stated in the motion made therefor by the plaintiff.

STUART & MILLER, for Appellee.

1. The defendant Shirley, will insist, that the court very properly gave the third instruction asked by the defendant, and very properly refused the first, sixth and seventh, asked by the plaintiff.

2. The court very properly overruled the motion for a new trial.

3. That by the statute of Missouri the action of ejectment will lie upon a mere pre-emption right.   The pre-emptioner is in no worse condition who has perfected his right, and obtained the certificate from the receiver of the proper land office.   See Digest of '35, Title Ejectment page.

That in this case the defendant having proved every fact which was essential to give him a pre-emption, and having proved his pre-emption within the time allowed by the act of Congress, had the better right thereto.   See Public Land Laws, part 1st,   574 and 473.   See same book part 2d, No. 1011, p. 1026.

That in this case of the plaintiff, it was the duty to have ascertained whether there was any pre-emption right; and when he entered, his entry was subject to be divested by any one entitled to pre-emption. See Land Laws No. 486, page 545.   Same book, page 61.

That as the register and receiver had granted to defendant his pre-emption certificate, their decision is final, and cannot be supervised

Pettigrew vs. Shirley.

by the State courts, and we are bound to presume that every fact necessary to warrant the certificate was proved to the register and receiver.

See Lewis v. Lewis, 9 vol. Mo. Rep. 183. Wilcox v. Jackson, 13 Peters' p. 517.

That as the legal title to the land in controversy was in the United States, a court of equity could not have afforded the defendant such relief as would have quieted the title; and any proceedings in that court would therefore have been nugatory.

NAPTON, J., delivered the opinion of the court.

Pettigrew brought ejectment against Shirley, to recover the east half of the s. w. qr. of sec. 5, town. 47, range 14. On the trial, the plaintiff produced a certificate from the receiver at the Fayette land office, bearing date the 10th April, 1839, for the land in controversy. The defendant defended on a pre-emption certificate, dated June 1st, 1840, granted by the same officer for the same land, and also proceeded to give proof, conducing to establish his pre-emption under the act of Congress of June 22d, 1838, by virtue of which he had claimed and procured his pre-emption certificate above stated. It appeared that defendant had resided on the quarter section since 1832, the principal part of his farm being on the east half of the quarter, but his garden, out-houses, and half of his dwelling house were on the west half. The plaintiff endeavored to prove that the defendant's location on the west half was accidental, and that he (defendant) supposed his house was on the west half, of which he was the owner. A variety of instructions were asked on both sides. The instruction given by the court at the instance of the defendant, embraces all the points in the case, about which there is any controversy. That instruction was : "If the defendant was a housekeeper, and the head of a family, and actually settled and resided as such upon the land mentioned in the declaration, on the 22d June, 1838, and four months prior thereto, and erected his dwelling house on said land prior to 22d February, 1838, and did not abandon or express his determination to abandon said pre-emption right, but proved his pre-emption and entered the land prior to 22d June, 1840, the defendant is entitled to a verdict. The defendant had a verdict and judgment in the circuit court.

The principal question in this case is, whether a pre-emption right under the act of 22d June, 1838, with a certificate thereon issued on the 1st June, 1840, will protect a defendant in ejectment against an entry of the same land on the 10th April, 1839.

Our statute permits an action of ejectment to be maintained on "a pre-emption right under the laws of the United States." This has been the law of this State since 1825, and the language of the act of 1835 is precisely the same as that employed by the act of 1825. When the act of 1825 was passed, in which this pre-emption right was first spoken of, there was no law of the United States, that I am aware of, recognizing any pre-emption right except such as was proved up before the register and receiver, and no pre-emption right whatever existed upon lands which had been in market. The pre-emption law of April 12, 1814, which continued in force with various modifications until 1830, required the settler to file his notice with the register two weeks prior to the public sales, and proof of the pre-emption was required to be satisfactory to the register and receiver. This was the character of pre-emption right declared by our law of 1825 to be sufficient to maintain an ejectment.

In 1830, (May 29) a new species of pre-emptioners is recognized by Congress. The proof of the pre-emption was still required to be made to the satisfaction of the register and receiver, but the time of making the proof was construed to extend to the time fixed for the expiration of the law, and the lands to be affected by it were construed to be lands which had been in market for years, as well as those which had never been offered for sale. The provisions of this act were continued from time to time until the final expiration of the act of June 22, 1838.

Under this series of pre-emption laws, a right of pre-emption was recognized by the laws of the United States, no evidence of which was to be found in the land office, nor could it be ascertained whether such right to a preference in the purchase of the land would ever be claimed by the pre-emptor, and perfected into a purchase. The question has then arisen whether such a pre-emption right as this is within the meaning of our statute, and will enable the pre-emptor to maintain or defend an action of ejectment. In Lewis v. Lewis, the judge who delivered the opinion of the court, intimated that such a pre-emption right would be sufficient to defeat an entry of the same land made previous to the expiration of the time allowed the pre-emptor to prove up his pre-emption. But the question did not arise in that case— nor does it arise here, for the pre-emption of Shirley had been proved and allowed before any suit was instituted by Pettigrew. The question is merely alluded to as it was discussed at the bar, and about which I mean to give no opinion in this case. Indeed I cannot perceive its importance, except in a case where the time for proving the pre-emption has expired; and no proof has been made, but only tendered

or offered to be made within the time. In such a case, the propriety of allowing the pre-emption to defeat a purchase of the same land by entry, may be a question of importance. I entirely concur with the judge who delivered the opinion of the court in Lewis vs. Lewis, that a pre-emptor under the act of 1830 or 1838, could not be ousted by an ejectment before the expiration of the time allowed him by law, for proving up his pre-emption; because the existence of his pre-emption, and the fact that the period had not arrived when he was bound to prove it, would show the purchase of the plaintiff to be illegal. But if the time for proving the pre-emption has actually expired, and no proof has in fact been made, though the pre-emptor offered to prove it, and the officers of government illegally refused to permit the proof, what title then has he upon which he can maintain his ejectment?

I recur to the main question in this case, the propriety of the action of the circuit court in allowing the pre-emption of Shirley, proved up on the 1st of June, 1840, to prevail over the entry of Pettigrew on the 10th April, 1839.

The act of June 22, 1838, continues in force the provisions of the act of May 29, 1830. This last act requires the proof of settlement and improvement to be made to the satisfaction of the register and receiver of the land district, and declares all assignments and transfers of the right, null and void. The fourth section provides that the act shall not delay the sale of the public lands beyond the time appointed for that purpose by the President's proclamation, and that the provisions of the act shall not be available to any one who fails to make the proof and payment required before the day appointed for the commencement of the sales of lands including the tract or tracts on which the pre-emption is claimed. The construction given to this act shortly after its passage, and down to the expiration of the law of 1838, was that its provisions were applicable to all the public lands, except such as were specially exempted in terms by the act, whether it had been previously in market or not. The effect of this construction was to produce an implied reservation from sale for the period fixed by the act, of all lands upon which a pre-emption right existed. The officers of government to whom the management of these sales was confided under instructions from the chief of the land department, accordingly refused to permit entries to be made of such lands, and as it was not always easy to determine the fact upon which their duty and power might depend in every case, they were instructed to permit entries and give certificates of sale, upon the express condition that if a pre-emption right on the land sold, was proved before the expiration of the

time allowed by law for such proof, they would return the purchase money without interest and vacate the certificate. This was the uniform construction given to the act of 1830, by the commissioner of the land office, and to this construction the action of the subordinate officers of the department was ultimately conformed. Not only did this construction receive the sanction of the officers of the government more immediately concerned in the disposition of the sales of the public lands, but Congress with a knowledge of such construction, from time to time re-enacted the essential provisions of this law, until 1838. Under this state of facts, the question would seem to be no longer open. Whatever views might be entertained by this court in relation to the propriety of the construction of the act of 1820, and the acts which succeeded it, on the subject of pre-emptions, which allowed pre-emptions on lands subject to private entry, we are not at liberty to dispute that construction of the law which has been sanctioned by Congress and acquiesced in by the public. This view of the case seems to have been taken by the supreme court of Indiana, in the case of Smith vs. Mosier, (5 Blackford 51) and by the supreme court of Illinois, in the case of Isaacs vs. Steel, and Bruner vs. Manlove, (3 Scammon 97 and 340.)

The entry of Pettigrew in April, 1839, was then made subject to be avoided by the grant of pre-emption to Shirley at any time prior to the 22d June, 1840. The effect of the act is to protect the pre-emptioner from the date of its passage. His title then commences, and is the older and better title, than an entry of the land previous to the date of his certificate. His pre-emption certificate relates back to the date of the act, and avoids all intermediate sales. This results from the construction given to the act of 1838. The commissioner of the general land office attempted to reconcile the right of the pre-emptors with the right of private entry, and the only way this could be done, was to make the private entries *conditional*. It is not for us to object to these conditional and avoidable sales. The government has sanctioned them and however inconvenient and inconsistent with the general laws of Congress on this subject, such an enactment may seem, the intent and purpose of the law must be carried out.

Under this construction of the pre-emption law, of 1838, I can perceive no necessity for driving the pre-emptor into a court of chancery. The defence is purely legal; his title is as much a legal one, as that of the purchaser at private entry—neither are consummate, but each is recognized by our statute.

In relation to the question of abandonment, as that question was

submitted to the jury by the instruction of the circuit court, whether it was material or not, the plaintiff in error has no cause for complaint. The jury negatived the fact of abandonment by their verdict.

The other Judges concurring with me in affirming the judgment of the circuit court, it will be accordingly affirmed.